### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DEBRA JUSICK,**

                         **Plaintiff,**

**-vs-**                                                   **Case No.  6:10-cv-126-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

                         **Defendant.**
_____

## MEMORANDUM OF DECISION

Debra Jusick (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") failed to: 1) consider and properly weigh the opinions of Claimant's treating and examining physicians; and 2) properly consider the Vocational Expert's (the "VE") written answer's to interrogatories opining that there were no jobs that Claimant could perform.  Doc. No. 17 at 2-22.   The Commissioner generally argues that substantial evidence supports the final decision, but does not directly address any of the issues raised by Claimant. Doc. No. 18 at 1-13.  For the reasons set forth below, the final decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of Section 405(g) because the ALJ failed to state with particularity the weight given to numerous opinions of Claimant's treating and examining physicians.

## I.  **BACKGROUND.**

Claimant was born on November 15, 1957.  R. 63.  On February 15, 2000, Claimant filed an application for benefits alleging an onset of disability as of February 2, 2000.  R. 63. Claimant has past relevant work experience as booking clerk for a jail, office manager, customer service representative, typesetter, and pet groomer.  R. 80.[1]  Claimant alleges disability due to: degenerative disc disease; back and leg pain; obesity; kidney stones; stroke; vertigo; arthritis; and diabetes.  R. 49; Doc. No. 17 at 4.  Claimant's application was denied initially and upon reconsideration.  Doc. No. 48-51.  On November 28, 200, Claimant requested a hearing before and ALJ.  Doc. No. 54.

On November 8, 2001, a hearing was held before ALJ Ruben O. Figueroa.  R. 28-47.  At the hearing, Claimant testified that she could walk for one block, stand for five minutes, sit for half an hour to an hour, and can lift less than a gallon of milk.  R. 40-41.  On November 20, 2001, ALJ Figueroa issued a decision finding the Claimant not disabled.  R. 9-16.  On June 12, 2002, Claimant filed an appeal with this court in Case Number 6:02-cv-679-Orl-JGG (Doc. No. 1).  On November 25, 2002, the Commissioner filed an unopposed motion to reverse and remand the Commissioner's final decision due to ALJ Figueroa's positive credibility determination. Doc. No. 15.  On December 4, 2002, the Court entered a judgment reversing and remanding the case to the Commissioner for the following:

> The [ALJ] will schedule[ ] a supplemental hearing and will question [Claimant] about the physical and mental demands of her past relevant work in light of her credible complaints.  The ALJ should consider the need for vocational expert testimony, and any hypothetical question should include all of [Claimant's] limitations established by the record as a whole.

---

[1] Claimant worked as a booking clerk at a jail from September of 1999 until the onset of disability date.  R. 80.

R. 310.   Thus, the case was remanded for a supplemental hearing to consider the physical and mental demands of Claimant's past relevant work due to the finding Claimant gave a credible account of her physical limitations.  R. 310.   On February 28, 2003, the Appeals Council entered an order remanding the case to the ALJ.  R. 312-13.

On September 17, 2003, a hearing was held before a different ALJ, Philemina M. Jones. R. 837-86.  On March 8, 2004, ALJ Jones issued a decision finding Claimant not disabled.  R. 295-305.  Claimant sought review of ALJ Jones's decision with the Appeals Council and, on January 3, 2005, the Appeals Council remanded the case back to the ALJ for a new hearing.  R. 306-07.  In its order, the Appeals Council states that it has enclosed the reasons why the case is being remanded to the ALJ and an explanation of its instructions to the ALJ on remand.  R. 306-07.[2]

Two years later, on January 27, 2007, a hearing was held before a third ALJ, Teresa Davenport.  R. 887-927.  During the hearing, ALJ Davenport (hereinafter, the "ALJ") stated that the case was remanded by the Appeals Council because:

> They had trouble with the fact that [ALJ Jones] rejected some of your treating doctors' diagnoses without really explaining why. They also wanted her to better explain why she rejected a treating source's opinion as to what you can physically do. . . .

R. 890.  At the conclusion of the hearing, the ALJ ordered additional consultative examinations. R. 925-927.  On September 13, 2007, the hearing was concluded.  R. 928-78.  On October 17, 2007, ALJ Davenport issued a decision finding Claimant not disabled.  R. 258-268.  Two years later, on December 9, 2009, the Appeals Council issued an order declining to review the ALJ's decision.  R. 244-46.  On January 25, 2010, Claimant filed the current appeal.  Doc. No. 1.

---

[2] The record does not contain the enclosure from the Appeals Council and, in their respective memoranda, neither party states the reasons for remand or describes the instructions provided to the ALJ.

## II.    **OPINION EVIDENCE.**

The dispositive issue in this case is the way the ALJ handled the opinion evidence from Claimant's treating and examining physicians.  Therefore, the Court limits its summary of the medical record below to those medical opinions.

    1.  Dr. Brent Schlapper – September 15, 2000.

Dr. Schlapper, a treating osteopathic physician, completed a state agency form stating that Claimant has: mild loss of motion due to degenerative disc disease and obesity; mild to moderate paravertebral muscle spasms; normal grip strength and fine dexterity; walks with a limp due to pain in left leg and obesity; and cannot squat or walk on heels, but Claimant can walk on toes.  R. 177.

    2.  Dr. Alvan Barber – July 26, 2002.

Dr. Barber, a consultative examining physician, conducted an independent medical evaluation of Claimant.  R. 369-72.  Dr. Barber's impressions were: degenerative disc disease of the lower back with chronic pain; history of renal stones; diabetes under control; and hypertension under control.  R. 372.  Dr. Barber also noted that Claimant had been diagnosed with depression in May of 2002. R. 370.  Dr. Barber offered the following opinion:

> Physical examination reveals [C]laimant is unable to walk, stand and sit for long periods of time without complaints of body pain. Claimant cannot walk without assistive devices.  Claimant is unable to lift or carry heavy objects.  Claimant is obese and symptoms are possibly perpetuated by excessive weight. Symptoms could limit [C]laimant to activities and occupation not requiring long periods of standing but possibly requiring the use of upper body movements and coordinated activities with hands.

R. 372 (emphasis added).

    3.  Dr. Cydney Yerushaimi, Ed.D. – July 30, 2002.

Dr. Yerushaimi, a psychologist, conducted a consultative mental evaluation of Claimant. R. 374-77.  Dr. Yerushaimi conducted psychological testing and a mental status examination of Claimant.  R. 376.  Dr. Yerushaimi diagnosed Claimant with an Axis I diagnosis of Depressive Disorder NOS and assigned Claimant a GAF score of 63.  R. 376.  Dr. Yerushaimi opined that Claimant has several barriers to employment, including her physical problems, but "[t]he probability is that she prefers being at home and is not actively seeking employment outside the home."  R. 376-77.

4.   Dr. Bruce G. Borkosky, Psy.D. – April 21, 2003.

Dr. Borkosky, a psychologist, conducted a consultative mental evaluation of Claimant. R. 378-81.  Dr. Borkosky conducted a mental status examination of Claimant.  R. 378-80.  Dr. Borkosky diagnosed Claimant with an Axis I diagnosis of Adjustment Disorder and Pain Disorder and an Axis II diagnosis of Personality Disorder NOS with borderline features.  R. 380. Dr. Borkosky opined that Claimant needed individual, group, and family psychotherapy and pain management, but her prognosis was fair.  R. 380.  Dr. Borkosky further opined that Claimant had a fair ability to respond appropriately to supervision, coworkers, and work pressures, and a good ability to understand, remember, and carry out instructions.  R. 380.

5.   Dr. Angela Alfaro – April 26, 2003.

Dr. Alfaro conducted a consultative physical examination of Claimant.  R. 382-85.  Dr. Alfaro's impressions were diabetes with some neuropathy, arthritis, hypertension and history of depression.  R. 385.  Dr. Alfaro opined that Claimant could sit for thirty to forty minutes with a break, stand for ten to fifteen minutes, and walk for ten to fifteen minutes.  R. 385.  Dr. Alfaro stated that Claimant can only lift five pounds frequently, but she has normal grip strength.  R.

385.

      6.  Dr. Alfaro – June 14, 2003.

On June 14, 2003, based upon her physical examination of Claimant, Dr. Alfaro completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  R. 386-89.  Dr. Alfaro opined that Claimant: can lift 10 pounds occasionally and less than 10 pounds frequently; can stand for 1 hour in an 8 hour workday due to Claimant's arthritis and neuropathy in her feet; can sit for 8 hours in a workday; is limited in pushing or pulling in her lower extremities due to neuropathy and "no range of motion"; cannot operate equipment; and can only occasionally climb, balance, crouch, kneel, crawl, or stoop due to "painful" neuropathy in feet and arthritis in joins.  R. 386-89.

      7.  Dr. Schlapper – September 27, 2003.

Dr. Schlapper, a treating osteopathic physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  R. 409.  Dr. Schlapper opined that Claimant: can lift less than 10 pounds occasionally and frequently; can walk less than 2 hours in an 8 hour workday; must periodically alternate between sitting and standing; and is limited in pushing and pulling in both upper and lower extremities due to severe degenerative arthritis in the hip, spine and ankles, diabetes and severe depression.  R. 410.  Dr. Schlapper opined that due to her impairments Claimant will miss work more than three times a month.  R. 410.  Dr. Schlapper stated that Claimant can never climb, balance, kneel, crouch, or crawl.  R. 410.  Dr. Schlapper concluded that due to degenerative disc disease Claimant is limited in reaching in all directions, handling, and fingering, but she is unlimited in feeling.  R. 411.  Dr. Schlapper also stated that Claimant is limited in all areas of environmental limitations.  R. 411.

Dr. Schlapper also completed a Mental Residual Functional Capacity Assessment.  R. 412-15.  Dr. Schlapper opined that Claimant is markedly limited in the ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain a regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  R. 412-13. Dr. Schlapper opined that Claimant is moderately limited in the ability to: carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; and respond appropriately to changes in the work setting.  R. 412-13.

8.   Dr. Boris Kawliche – January 20, 2005.

Dr. Kawliche, a treating psychiatrist, completed a Mental Residual Functional Capacity Assessment.  R. 421-23.  Dr. Kawliche opined that Claimant is not significantly limited in her ability to: remember locations and work-like procedures; understand and remember very short

and simple instructions; understand and remember detailed instructions; carry out very short and

simple instructions; ask simple questions or request assistance; maintain socially appropriate

behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal

hazards and take appropriate precautions; travel in unfamiliar places or use public transportation;

and set realist goals or make plans independently of others.  R. 421-22.  Dr. Kawliche opined

that Claimant is moderately limited in her ability to: work in coordination with or proximity to

others without being distracted by them; make simple work-related decisions; and complete a

normal work-day and workweek without interruptions from psychologically based symptoms

and to perform at a consistent pace without an unreasonable number and length of rest periods.

R. 421-22.  In all other area, Dr. Kawliche opined that he had insufficient evidence to offer an

opinion.  R. 421-22.  Dr. Kawliche stated:

> It appears that [Claimant] has attention deficit hyperactive
> disorder. . . .  It is very difficult for me to determine the level of her
> impairment from visits in the office.  We are going to try her on
> medication to see if it helps with these problems.

R. 423.

9.  Dr. Bruce G. Rankin – September 1, 2006.

Dr. Rankin, a treating osteopathic physician, completed a Medical Source Statement of

Ability to Do Work-Related Activities (Physical).  R. 565-67.  Dr. Rankin opined that Claimant

can lift less than 10 pounds occasionally and frequently, and can stand for less than 2 hours in an

8 hour workday. R. 565.  Dr. Rankin stated that Claimant must alternate between sitting and

standing to relieve pain and discomfort.  R. 566.  Dr. Rankin opined that Claimant is limited in

pushing and pulling in both her upper and lower extremities due to degenerative arthritis of the

lumbar and cervical spine as revealed by an MRI and due to poor strength in right shoulder from

a fractured collar bone in September of 2005.  R. 566.  Dr. Rankin concluded that due to her impairments, Claimant would miss work more than three times a month.  R. 566.  Dr. Rankin stated that Claimant can never balance, kneel, crouch, or crawl, and can only occasionally climb.  R. 566.  Dr. Rankin opined that Claimant is limited in all manipulative functions except fingering due to numbness in upper and lower extremities secondary to diabetic neuropathy. R. 567.

   10. Dr. Barber – April 2, 2007.

  On April 2, 2007, Dr. Barber conducted another consultative independent medical examination.  R. 588-95.  Dr. Barber's impressions were: morbid obesity; cervical degenerative disc disease with right side neck spasms with pain; lumbar degenerative disc disease with positive straight leg testing with pain; diabetes, controlled with medication, with right and left distal upper and lower extremity neuropathy; high blood pressure, poorly controlled; depression; vertigo, on medication with improvement; arthralgia in her shoulders, elbows, hips, left knee, and ankle pain.

  Dr. Barber then completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  R. 596-99.  Dr. Barber opined that Claimant can lift 20 pounds occasionally, 10 pounds frequently, stand for at least two hours in an 8 hour workday, and can sit for 8 hours in an 8 hour workday.  R. 596-597.  Dr. Barber stated that Claimant is limited in pushing and pulling in both the upper and lower extremities due to cervical and lumbar degenerative disc disease.  R. 597.  Dr. Barber opined that Claimant has occasional postural limitations, but can never balance due to vertigo.  R. 597.  Dr. Barber stated that Claimant is occasionally limited in reaching in all directions, but otherwise has no manipulative limitations.  R. 598.

11. Dr. Rosimeri Clements, Psy.D. – April 27, 2007.

Dr. Clements, an examining mental health consultant, performed mental health evaluation and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). R. 600-15. Dr. Clements diagnosed Claimant with Axis I diagnoses of Bipolar II Disorder, Cognitive Disorder NOS, and Attention-Deficit/Hyperactivity Disorder NOS. Dr. Clements diagnosed Claimant with an Axis II diagnosis of Boderline Personality Disorder and assigned a GAF score of 50. R. 605. Dr. Clements opined that Claimant is markedly limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; and make judgments on simple-work related decisions. R. 606. Dr. Clements opined that Claimant is slightly limited in her ability to: understand and remember short, simple instructions; and carry out short, simple instructions. R. 606. Dr. Clements stated:

> Her ability to carry out work related decisions will be impaired by her depression, pain, and short-term memory problems. The [testing] reveals her high emotionality and need for consistent mental health treatment.

R. 606. Dr. Clements opined that Claimant is markedly limited in her ability to respond appropriately to changes in a usual work setting, and moderately limited in her ability to: interact appropriately with the public; interact appropriately with supervisors and co-workers; and respond appropriately to changes in a routine work setting. R. 607. Dr. Clements based that opinion on test results, her behavioral observations, and Claimant's background. R. 607. Dr. Clements also opined that Claimant would be further limited due to her gait problems and that Claimant would be unable to manage benefits in her own best interest. R. 607.

12. Vocational Expert – Nicholas S. Fidanza – June 18, 2007.

The ALJ submitted interrogatory questions to Mr. Fidanza, an impartial vocational expert

(the "VE"), based upon Dr. Clements and Dr. Barber's most recent consultative evaluations and

medical source statements.   R. 610.   The interrogatories and the VE's answers are set forth

below:

> Q.   Please review the enclosed [consultative evaluations].   If the residual functional capacity is consistent with both of these reports, so that the [C]laimant is limited to simple, 1-2 step[ ] jobs with little contact with public or co-workers, and the job requires a sit-stand option, with no overhead reaching and only occasional reaching in other directions, are there any jobs that the [C]l could perform that are available in the national economy[?]
>
> A.   Within the parameters specifically expressed in this hypothetical, and assuming a restriction to Light physical demand work there would be a very limited and inconsequential number of occupations remaining.  By way of explanation, when one is limited to no more than light work the limitations to only occasional reaching is so limiting as to preclude all but very few occupations.  Light and sedentary work by the very nature of the work itself requires frequent reaching, if not bilaterally, at least with the dominant upper extremity.
>
> Q.   If not, are there any jobs that the [C]laimant could perform in significant numbers in the national economy, even with the limitations placed in these [consultative evaluations?]
>
> A.   The limitations in [Dr. Clements' opinion] are most limiting.   While any one of these limitations to marked and/or moderate would not in itself preclude unskilled work, the combination of items noted as moderate and marked . . . are so restrictive that they would preclude any work on a sustained basis.

R. 610, 615.  Thus, based on the hypothetical question posed in the interrogatory, the VE opined

that there were not an adequate number of jobs available that Claimant could perform and

Claimant could not perform any work on a sustained basis given the limitations contained in Dr.

Clements' opinion.   R. 610, 615.

## III.   **ALJ'S DECISION**.

On October 17, 2007, the ALJ issued a decision finding Claimant not disabled.  R. 311-
21.[3]   Regarding the medical evidence and medical opinion evidence, the ALJ states the
following:

> The medical evidence of record reveals that the [C]laimant does
> not have any herniated or bulging discs.  The CT scan of her
> lumbar spine in December 2004 only revealed some degeneration.
> An overview of the evidence reveals that the [C]laimant's main
> problem in this are[a] is due to aging and weight issues. . . .
>
> An independent medical examination . . . with Alvin Barber, M.D.
> on July 26, 2002, revealed [sic].[4]  At that time, it was noted that
> there were no signs of carpal tunnel impingement.  Dr. Barber
> noted that the [C]laimant's alleged limitations were perpetuated by
> her excessive weight.
>
> [Dr. Alfaro's consultative examination] in April 2003 revealed that
> despite complaints of back pain, she had normal range of motion,
> normal straight leg raising, normal heel/toe walking, and a normal
> gait.
>
> Giving the [C]laimant the benefit of the doubt regarding her
> alleged back pain, it is found that prior to the expiration of her date
> last insured, she was limited to lifting and carrying a maximum of
> 20 pound[s] occasionally and 10 pounds frequently, stand and/or
> walk 2 hours during an 8-hour workday, and sit 8 hours during an
> 8-hour workday secondary to degenerative disc disease of the
> lumbar spine.    Additionally, secondary to degenerative disc
> disease, she was limited to only occasional postural activities.
>
> Regarding the [C]laimant's complaints of dizziness, on October
> 14, 2004, it was noted that an MRI of the brain only showed small

---

[3] The ALJ determined that Claimant's testimony "in general lacks sufficient indicia of credibility to be accorded
much weight." R. 263.  Although not directly relevant to the issues in this case, the ALJ stated that one of the
reasons for finding Claimant lacked credibility was Claimant's unsupported testimony that she had been prescribed a
cane for ambulation.  R. 264.  On June 29, 2004, Claimant was prescribed a cane due to chronic low back pain,
severe sciatica, and degenerative disc disease of the lumbar spine.  R. 451.  Dr. Barber, in his consultative opinion,
also states that "Claimant cannot walk without assistive devices." R. 372.  Additionally, the ALJ noted that Claimant
was incarcerated in 2002.  R. 263.  There is nothing in the record or the testimony provided at the hearings to
support the ALJ's statement.
[4] This sentence ends after "revealed."

vessel disease and an ENG was abnormal with findings consistent with both a peripheral and a central mechanism for dizziness. Accordingly, secondary to vertigo, it is found that she could not balance or work around temperature extremes or around vibrations, hazards, or fumes.

Regarding the [C]laimant's mental status, treatment records from Mr. Burns and Dr. Kawliche for depression reveal diagnoses of major depressive disorder with attention deficit hyperactivity disorder. Those records revealed that she was undergoing treatment since May 2002 and was treated with Efflexor. Records from September 2006 from Dr. Kawliche revealed that she still had some issues with depression and anxiety but that she was coping. Her diagnoses continued to be major depressive disorder with attention deficit hyperactivity disorder.

A consultative psychological examination on July 24, 2002, with Cydney Yerushalmi [sic], Ed.D. revealed that [C]laimant's personal life was busy and that she was working on her website and did not want to work outside the home. The [C]laimant also reported that she was home-schooling her daughter.

It is also noted that the consultative physical examination with Dr. Barber on July 26, 2002 revealed that her affect appeared normal and there was no evidence of depression and her cognitive functioning was said to be adequate.

A consultative examination with psychologist Bruce Borkosky, Ps.D., on April 10, 2003, revealed that her immediate and long term/remote memory was normal. There were no observed or reported psychotic symptoms. Dr. Borkosky opined that the [C]laimant had a good ability to understand, remember, and carry out instructions, and a fair ability to respond appropriately to supervision, co-workers, and work pressures. Adjustment disorder, pain disorder, and personality disorder, not otherwise specified (NOS) were diagnosed.

Giving the [C]laimant the benefit of the doubt regarding her allegations of depression and her inability to get along with people, it is found that she is limited to simple, one to two step job instructions with only occasional interaction with the public, co-workers, and supervisors.

The [C]laimant was sent for consultative examinations prior to the

continued hearing.  An orthopedic exam with A.W. Barber, M.D. on April 7, 2007, revealed impressions including morbid obesity; cervical degenerative disease with right side spasms with pain; lumbar degenerative disease with positive right straight leg raising; controlled diabetes mellitus; hypertension, poorly controlled with medication; depression; vertigo with medication with improvement' arthralgais.  Despite these diagnoses, Dr. Barber opined that [C]laimant retained the residual functional capacity to perform work at the sedentary level of exertion.  Dr. Barber also opined that she could only reach overhead occasionally due to her alleged right shoulder pain and limitation of motion.  Giving [C]laimant the benefit of the doubt that her right should impairment pre-existed the expiration of her date last insured, she could not lift anything over her head.

A psychological consultative examination with Rosimeri Clements, Psy.D., on March 27, 2007, revealed that she had a full range of appropriate effects and appeared to be in no acute mental distress.   Dr. Clements opined that the prior diagnosis of adjustment disorder was not currently met and opined that she suffered from bi-polar disorder, moderate; cognitive disorder; attention deficit/hyperactivity disorder, and borderline personality disorder.   On that date, the [C]laimant's global assessment of functioning (GAF) was 50.  It is noted that a GAF at 50 is consistent with a finding of total disability as it indicates some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. . . . However, there is no evidence that her GAF was at this level at any time prior to the expiration of her date last insured.

It is noted that the recent records submitted by Gerald Miceli, M.D. and Bruce Rankin, D.O., pertain to a period beyond the expiration of the [C]laimant's date last insured and bear no relevance to her medical condition during that time period.

The report from treating source, Dr. Schlapper that the [C]laimant would be absent from work for more than 3 days per month is not supported by any medical evidence contained in the record.  The opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary.  A treating physician's medical opinion on the issue of the nature and severity of an impairment is entitled to special significance and, when supported by objective medical evidence of record, is

> entitled to controlling weight.   I find that this opinion is not
> bolstered by the other evidence of record.   <u>Because the evidence of</u>
> <u>record does not establish that the [C]laimant is disabled . . ., the</u>
> <u>undersigned cannot accept Dr. Schlapper's opinion</u> that [C]laimant
> would be absent from work for more than 3 days per month.

R. 264-66 (emphasis added).   Thus, the ALJ only stated with particularity the weight given to

that portion of Dr. Schlapper's opinion in which he concluded that Claimant would miss more

than three days or work per month due to her impairments.   The ALJ rejected that portion of Dr.

Schlapper's opinion on the basis of general statement that it was not supported by the medical

evidence in the record.[5]

## IV.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has

established a five-step sequential evaluation process for determining whether an individual is

disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).   In *Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as

follows:

> In order to receive disability benefits, the claimant must prove at
> step one that he is not undertaking substantial gainful activity. At
> step two, the claimant must prove that he is suffering from a severe
> impairment or combination of impairments. At step three, if the
> claimant proves that his impairment meets one of the listed
> impairments found in Appendix 1, he will be considered disabled
> without consideration of age, education, and work experience. If
> the claimant cannot prove the existence of a listed impairment, he
> must prove at step four that his impairment prevents him from
> performing his past relevant work. At the fifth step, the regulations
> direct the Commissioner to consider the claimant's residual

---

[5] In the decision, the ALJ did not mention the written answers to interrogatories supplied by the VE indicating that there was not sufficient work available for Claimant, but instead, relied solely upon the testimony of a different vocational expert who reached the opposite conclusion.  R. 266-67.

> functional capacity, age, education, and past work experience to
> determine whether the claimant can perform other work besides his
> past relevant work.

*Id.* (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## B.     THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute

[its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir.

1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[6]

## V.   **ANALYSIS.**

Claimant maintains that the ALJ failed to properly weigh and consider the opinion evidence. Doc. No. 17 at 2-20. As set forth above, the Commissioner generally argues that the ALJ's decision is supported by substantial evidence, but does not specifically address any of the issues raised by Claimant on appeal. Doc. No. 18.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that

---

[6] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." *Id*. at 1178-79.  The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'" *Id*. (quoting 20 CFR §§ 404.1527(a)(2), 416.927(a)(2)).  Thus, the treating physician's treatment notes constituted an

-19-

opinion. *Id*.   The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id*.   The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id*.

In this case, numerous treating and consulting physicians, psychologists, and a psychiatrist offered medical opinions containing conflicting evidence. *See* R. 177, 369-72, 374-77, 378-81, 382-85, 386-89, 409-15, 421-23, 565-67, 588-99, 600-07.   Claimant's treating physicians and psychiatrists, Drs. Schlapper, Kawliche, and Rankin, offered opinions in this case.   Dr. Schlapper and Dr. Rankin, osteopathic physicians, offered opinions indicating Claimant is disabled. *See* R. 177, 409-415, 565-67.  Dr. Kawliche, a psychiatrist, indicated that Claimant was not disabled from a mental perspective, opining that Claimant is not significantly limited in multiple areas, moderately limited in other areas, and that Dr. Kawliche had insufficient evidence to offer opinions in some area of mental functioning.  R. 421-23.

Numerous examining physicians, psychologists, and psychiatrists, also conducted consultative examinations and offered various opinions.   Dr. Clements offered an opinion indicating that Claimant is disabled.  R. 600-07.  Drs. Barber, Yerushaimi, Borkosky, and Alfaro offered opinions indicating that Claimant is not disabled. R. 374-77, 369-72, 378-81 382-85, 386-89, 588-95.

The ALJ failed to state with particularity the weight assigned to any of the above referenced medical opinions except for the portion of Dr. Schlapper's September 27, 2003,

opinion indicating that Claimant's impairments would cause her to miss more than three days of work per month.  *See* R. 264-66.[7]  Without clearly stating the weight given to those medical opinions, it is impossible for the Court to determine whether the final decision is supported by substantial evidence, particularly in this case where the various medical opinions contain conflicting evidence.  *Winschel*, 631 F.3d at 1178-79.  This error constitutes reversible error.  *MacGregor,* 786 F.2d at 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

## VI.   **REMEDY.**

Claimant has requested a remand for a calculation of an award of benefits.  Doc. No. 17 at 1, 21-22.  As set forth above, the Court may remand for a calculation of an award of benefits where the cumulative effect of the evidence establishes disability without any doubt or where a claimant has suffered an injustice.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (evidence establishes disability without any doubt); *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982) (award of benefits where claimant has suffered an injustice).  Due to the conflicts in the medical opinion evidence and the ALJ's failure to state with particularity the weight given to that evidence, the Court is unable to conclude that the Claimant is disabled without any doubt.

---

[7] As set forth above, the ALJ rejected Dr. Schlapper's opinion because it was not supported by the medical evidence. R. 267.  However, the Court notes Dr. Rankin, another treating physician, also offered the same opinion. R. 566. Therefore, there was medical evidence in the record supporting Dr. Schlapper's opinion.  Moreover, general statements to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates a factual basis for such a blanket statement. *See Poplardo v. Astrue*, 2008 WL 68593, *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").  Otherwise, the Court would be left in a situation where it would have to impermissibly reweigh the evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner.").

Regarding whether or not the Claimant has suffered an injustice, this case is over a decade old and, through no fault of Claimant's, this case has previously been remanded twice due to errors made by the Commissioner.  R. 60, 306-07, 310, 312-13.  For the reasons set forth above, the case must be remanded to the Commissioner for a third time.  In this case, besides the error detailed above, the ALJ also made certain misstatements of fact and omitted certain evidence from her decision.  For example, two of the reasons provided by the ALJ for finding Claimant not credible were that there was no evidence supporting Claimant's assertion that she required a cane for ambulation and because she had been incarcerated in 2002.  R. 263-64.  First, the record contains a prescription for a cane and Dr. Barber's 2002 opinion clearly states that Claimant requires assistive devices for ambulation.  *See* R. 264, 372, 451.  Second, although Claimant was employed as a booking clerk at a jail until February of 2000, there is no evidence in the record that the Court could find on its own or that was cited by the parties indicating that she was incarcerated at anytime during the relevant time period.  R. 80.  Finally, the record contains evidence from a VE, indicating that there are no jobs available that Claimant could perform, which the ALJ ignored and which conflicts with the testimony of the another vocational expert relied upon by the ALJ in her decision.  R. 267, 610, 615.  The ALJ provided no explanation about how the conflict in the VEs' testimony was resolved.

Given the history of this case, the ALJ's current errors, the factual misstatements and omission, the Court concludes that this case is approaching the point where an injustice has occurred because it is true that justice delayed is justice denied.  However, at this time, the Court finds that a remand for further proceedings is more appropriate than awarding benefits because the evidence in this case is conflicting.  On remand, the Commissioner is urged to expedite the

proceedings.  The ALJ should clearly articulate a basis for a credibility determination and must state with particularity the weight given to the medical opinions of record and the reasons therefor.  Thus, when the ALJ resolves conflicts in the evidence, the ALJ should clearly articulate the reasons therefor so that the Court can determine whether substantial evidence supports the ALJ's findings.  Failure to comply may result in a finding that Claimant has suffered an injustice.

## VII.    <u>CONCLUSION</u>.

For the reasons stated above, the final decision of the Commissioner is **REVERSED and REMANDED pursuant to sentence four of Section 405(g) because the ALJ failed to state with particularity the weight given to the medical opinion evidence.  The Clerk is directed to enter judgment in favor of Claimant.**

**DONE and ORDERED** in Orlando, Florida on March 21, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Edward S. Rue, Esq.
Rue & Ziffra, P.A.
632 Dunlawton Avenue
Port Orange, FL 32127


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Teresa J. Davenport
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224